UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
**(HONORABLE NAOMI R. BUCHWALD)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 04 CR 273(NRB) |
| Plaintiff, | ) ) | Date: |
| v. | ) ) | Time: |
| **FRANCIS ALTIERI**, | ) ) ) | |
| Defendant. | ) ) | |

___

**ALTIERI'S OBJECTION TO IMPOSITION OF
RESTITUTION AT SENTENCE**
___

**On the Brief**:  Alan Silber, Esq. (AS 2370)

>Walder, Hayden & Brogan, P.A.
>5 Becker Farm Road
>Roseland, New Jersey 07608
>(973) 992-5300
>
>Fasulo, Shalley & DiMaggio
>225 Broadway, Suite 715
>New York, NY  10007
>(212) 566-6212
>
>Attorneys for
>Defendant Francis Altieri

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................ ii

**RESTITUTION CANNOT BE IMPOSED AS A MATTER OF LAW** ................................ 2

  **PRELIMINARY STATEMENT** ....................................................................................... 2

  **ELEMENTS OF MISPRISION** ......................................................................................... 2

  **THE UNDERLYING CRIME WAS COMMITTED IN 2000; ALTIERI'S CRIME WAS COMMITTED IN 2002** .................................................................................. 2

  **FRANK ALTIERI ONLY KNEW ABOUT THE FRAUD AFTER IT HAD BEEN COMPLETED** ..................................................................................................... 3

  **CONTINO DID NOT PAY RESTITUTION TO DOUBLECLICK; FRANK ALTIERI SHOULD NOT BE ORDERED TO PAY RESTITUTION.** ............................... 3

  **ARGUMENT** ......................................................................................................................... 3

      A.    **A CRIME MUST BE THE DIRECT AND PROXIMATE CAUSE OF A VICTIM'S LOSS BEFORE RESTITUTION CAN BE ORDERED** ................... 3

      B.    **ALTIERI'S CRIME OF MISPRISION DID NOT DIRECTLY AND PROXIMATELY CAUSE DOUBLECLICK'S LOSS** ........................................ 6

          1.    *Plea Colloquy* .......................................................................................... 6

          2.    *No Evidence Was Produced that Altieri Was Aware of Contino's Scheme While It Was in Progress* ........................................................................ 6

      C.    **DETERMINING RESTITUTION WOULD UNNECESSARILY BURDEN THE SENTENCING PROCESS** ......................................................... 8

  **CERTIFICATION OF ELECTRONIC MAILING** ............................................................ 12

# TABLE OF AUTHORITIES

**CASES**

Hughey v. United States,
  495 U.S. 411, 110 S. Ct. 1979, 109 L. Ed. 2d 408 (1990) ............................................................ 5

Kamagate v. Ashcroft,
  385 F.3d 144 (2d Cir. 2004) ........................................................................................................ 2

Ratliff v. United States,
  999 F.2d 1023 (6th Cir. 1993) .................................................................................................... 5

United States v. Amato,
  ____ F.3d ____, 2008 WL 3876554 (2d Cir. 2008) ............................................................... 4, 5

United States v. Bengis,
  2007 WL 1450381, at *4 (S.D.N.Y. May 17, 2007) ................................................................... 4

United States v. Cefalu,
  85 F.3d 964 (2d Cir. 1996) ......................................................................................................... 2

United States v. Chalupnik,
  514 F.3d 748 (8th Cir. 2008) ...................................................................................................... 5

United States v. Douglas,
  525 F.3d 225 (2d Cir. 2008) ....................................................................................................... 4

United States v. Grundhoefer,
  916 F.2d 788 (2d Cir. 1990) ....................................................................................................... 4

United States v. Kones,
  77 F.3d 66 (3d Cir. 1996) ........................................................................................................... 4

United States v. Ledesma,
  60 F.3d 750 (11th Cir. 1995) ...................................................................................................... 4

United States v. Reifler,
  446 F.3d 65 (2d Cir. 2006) ......................................................................................................... 5

**STATUTES**

18 U.S.C. §3663 ........................................................................................................................ 2, 3

18 U.S.C. §3663(a)(2) ............................................................................................................... 4, 6

18 U.S.C. §3663A ...................................................................................................................... 2, 3

18 U.S.C. §3663A(a)(2) ............................................................................................................ 4, 6

18 U.S.C. §3663A(c)(3)(B) ....................................................................................................... 5, 9

**OTHER AUTHORITIES**

1996 U.S.C.C.A.N. 924 ................................................................................................................ 5

## RESTITUTION CANNOT BE IMPOSED AS A MATTER OF LAW

**PRELIMINARY STATEMENT**

Restitution cannot be imposed in the present case because the loss to DoubleClick is attributable to John Contino's billing scheme, which had been completed prior to the commencement of Altieri's crime of Misprision. Thus, Frank Altieri's crime is not the direct and proximate cause of DoubleClick's loss, as such, imposing restitution would violate the terms of 18 U.S.C. §§3663 and 3663A.

**ELEMENTS OF MISPRISION**

Misprision of felony occurs when (1) a felony is committed; (2) the defendant had full knowledge of that felony; (3) the defendant failed to notify an authority as soon as possible; and (4) the defendant did an affirmative act to conceal the crime. United States v. Cefalu, 85 F.3d 964, 969 (2d Cir. 1996); see also Kamagate v. Ashcroft, 385 F.3d 144, 156 (2d Cir. 2004) (same).

**THE UNDERLYING CRIME WAS COMMITTED IN 2000[1]; ALTIERI'S CRIME WAS COMMITTED IN 2002**

It was only after the loss had already been inflicted on DoubleClick that Altieri's crime of Misprision began (he learned of Contino's scheme after it had concluded) and it was not completed until May of 2002 (when he was interviewed by the New York State authorities). See Altieri Information and Plea Colloquy.

---

[1] With one exception – a May 2001 invoice for cleaning done in Thornton, Colorado (G-314) – all of the invoices identified by the government at trial as overbilling took place in 2000. See Argument at Section B 2 (pp 5-7) infra.

2

**FRANK ALTIERI ONLY KNEW ABOUT THE FRAUD <u>AFTER</u> IT HAD BEEN COMPLETED**

John Contino's companies — first EDP Interiors and then XYZ Maintenance — were hired by Altieri to do the Porter and Maintenance work at DoubleClick (non-union). There came a time when Altieri fired XYZ Maintenance from that position and hired a replacement company, unrelated to Contino, to perform the Porter and Maintenance services for DoubleClick. After that firing, Altieri learned that Contino had overbilled DoubleClick. Subsequently, when interviewed by New York State law enforcement in the Southern District of New York, in May of 2002, Altieri did not disclose his knowledge. <u>See</u> Plea Colloquy July 2, 2008 at p.25-27. Thus, Altieri's crime could not be the direct and proximate cause of DoubleClick's losses. Therefore, restitution cannot be ordered.

**CONTINO DID NOT PAY RESTITUTION TO DOUBLECLICK; FRANK ALTIERI SHOULD NOT BE ORDERED TO PAY RESTITUTION.**

John Contino pled guilty to some crimes to resolve all the charges against him. The crimes to which he pled guilty and for which he was sentenced (pursuant to a Plea Agreement where other crimes that he committed were dismissed) did not include his defrauding DoubleClick, and so he could not and was not ordered to pay restitution to DoubleClick. It would be anomalous for Altieri to pay restitution to DoubleClick for a crime committed solely by John Contino, which was unknown to Altieri until after it had been completed.

<u>**ARGUMENT**</u>

**A. A CRIME MUST BE THE DIRECT AND PROXIMATE CAUSE OF A VICTIM'S LOSS BEFORE RESTITUTION CAN BE ORDERED**

The Mandatory Victims Restitution Act ("MVRA"), codified at 18 U.S.C. §3663A, and the Victim Witness Protection Act ("VWPA")—the voluntary restitution act—codified at 18 U.S.C. §3663, define "victim" as a "person **directly and proximately** harmed as a result of the

3

commission of an offense for which restitution may be ordered." 18 U.S.C. §3663A(a)(2); 18 U.S.C. §3663(a)(2) (emphasis added); See also United States v. Douglas, 525 F.3d 225, 253 (2d Cir. 2008) (same).

The word "directly" is an important modifier and makes the requirement before restitution can be imposed more difficult to satisfy than mere proximate cause. In United States v. Bengis, the Southern District adopted the analysis of the Third Circuit that:

> Section 3663(a)(2) [of Title 18] is not so broad that it permits a district court to order restitution to anyone harmed by any activity of the defendant related to the scheme, conspiracy, or pattern. Rather, **in order for restitution to be permissible, the harm must 'directly' result from the 'criminal conduct' of the defendant**. In this context, we interpret 'direct' to require that the harm to the victim be closely related to the scheme, rather than tangentially linked. Further, we interpret 'defendant's criminal conduct in the course of the scheme, conspiracy or pattern' to mean conduct that is both engaged in furtherance of the scheme, conspiracy or pattern, and proscribed by the criminal statute the defendant was convicted of violating.

2007 WL 1450381, at *4 (S.D.N.Y. May 17, 2007) (quoting United States v. Kones, 77 F.3d 66, 70 (3d Cir. 1996); see also United States v. Amato, _____ F.3d ____, 2008 WL 3876554 (2d Cir. 2008); United States v. Ledesma, 60 F.3d 750, 751 (11th Cir. 1995) (holding that restitution was not appropriate where defendant was convicted of attempting to export stole cars because "injury to the [victims] was caused by the theft of the vehicle, not by [defendant's] subsequent attempt to export the stolen [cars]. Because [defendant] was not convicted of stealing the [cars], he cannot be ordered to pay restitution for injury which resulted from the car's theft.").

Similarly, in United States v. Grundhoefer, the Second Circuit held that "[r]estitution is available 'only for the loss caused by the specific conduct that is the basis of the offense of conviction.'" 916 F.2d 788, 794 (2d Cir. 1990) (quoting Hughey v. United States, 495 U.S. 411, 413, 420-21, 110 S. Ct. 1979, 1981, 109 L. Ed. 2d 408 (1990) (under Hughey's interpretation of

4

the VWPA, restitution could not be ordered based on criminal charges dropped pursuant to a plea agreement))[2]; see also Ratliff v. United States, 999 F.2d 1023 (6th Cir. 1993) (holding that the proper amount of restitution was limited to the loss directly resulting from the defendant's embezzlement).

Moreover, if the issue of restitution or the amount of restitution is complex and would unduly burden the sentencing process, it should not be ordered.  In United States v. Reifler, 446 F.3d 65, 136 (2d Cir. 2006) the Second Circuit emphasized that "Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof, as it provided that the MVRA is to be inapplicable if the court finds that the determination of complex factual issues related to the cause of amount of the victims' losses would unduly burden the sentencing process." (citing 18 U.S.C. §3663A(c)(3)(B)); accord, United States v. Amato, ___ F.3d ___, 2008 WL 3876554, at *6 (2d Cir. 2008).  Furthermore, the MVRA "provision reflects Congress's intention that the process of determining an appropriate order of restitution be 'streamlined,' and that the restitution 'determination be made quickly.'" Id. (quoting Senate Report at 20, 21 *reprinted in* 1996 U.S.C.C.A.N. 924 at 933, 934.)  "[C]ases 'in which the victim's loss is *not clearly* causally linked to the offense, should not be subject to mandatory restitution.'" Id.

---

[2]   As explained by the Eighth Circuit:

> Consistent with Hughey, the Senate Judiciary Committee Report [for the MVRA] explained that, **unless a plea agreement provides otherwise**, the "mandatory restitution provisions apply only in those instances where a named, identifiable victim suffers a physical injury or pecuniary loss directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted." S. Rep. No. 104-179, at 19 (1996), reprinted in 1996-4 U.S.C.C.A.N. 924, 932. Congress also amended the VWPA so that the two statutes would contain identical definitions of the term "victim" and substantively identical plea agreement provisions.

United States v. Chalupnik, 514 F.3d 748, 752-53 (8th Cir. 2008).

**B. ALTIERI'S CRIME OF MISPRISION DID NOT DIRECTLY AND PROXIMATELY CAUSE DOUBLECLICK'S LOSS**

Altieri's crime did not cause any loss to DoubleClick. Any loss suffered by DoubleClick was caused by Contino's scheme, in which Altieri has denied being a participant. It was only <u>after</u> the loss had already been inflicted on DoubleClick that Altieri's crime of Misprision (failing to inform lawful authority) began. It was not completed until he failed to disclose what he had learned to the State police during their May 2002 interview. Obviously, disclosure at that point would not have helped the victim avoid incurring the loss. Therefore, 18 U.S.C. §§3663A(a)(2) and 3663(a)(2) do not permit restitution to be imposed.

  1. *Plea Colloquy*

THE COURT:  Mr. Altieri, tell me now in your own words what you did in connection with the crime to which you're entering a plea of guilty.  You can -- looks like you have something to read.  You can read if you wish, but I need to be told that it's your own words; in other words, it's not something just dictated to you; or in any event, it's something that you adhere to, believe it.
THE DEFENDANT:  Yes, I actually wrote this myself.
THE COURT:  All right.  Go ahead, sir.
THE DEFENDANT:  <u>After the fact</u> I uncovered that Mr. John Contino --
THE COURT:  Go a little slower and more loud, loudly.  More loudly.  Louder, that's the word.
THE DEFENDANT:  Yes, sir.  <u>After the fact</u> I uncovered that Mr. John Contino was overbilling DoubleClick.  I did not timely inform any lawful authority.  When interviewed by New York State law enforcement in the Southern District of New York, I did not disclose my knowledge.  I knew that was wrong. (*Emphasis added*)

  2. *No Evidence Was Produced that Altieri Was Aware of Contino's Scheme While It Was in Progress*

At trial, the documentary evidence of Contino's scheme was introduced through Sarah Nasir, the government's summary witness, who identified 19 invoices[3], which the government argued constituted billing for work already done and paid for. The date of the

---

[3] Nasir identified some 17 sets of invoices (G-302 to G319; there was no G-318).  Obviously, only one in the set – the last received – could be alleged as overbilling.  G-312 has four invoices; A and C are virtually identical and the other two – G-312E and G-312G have a single overlapping day.

earliest invoice she identified was December of 1999 (G-302A and C) and the date of the last invoice she identified for work done in New York City was October 6, 2000 (G-319B). There was one invoice for cleaning in Thornton, Colorado dated May 2, 2001 (G-314C). The date the New York State authorities interviewed Altieri, where he did not tell them of Contino's scheme was May of 2002. Altieri's crime was not completed until then.

Altieri has denied being a participant in Contino's scheme, a position he has consistently maintained with authorities since May of 2002. He asserts that he did not learn of Contino's scheme until "after the fact," well after the last invoice identified by Ms. Nasir was dated. The evidence adduced by the government at trial supports Altieri's assertion.

The scheme, demonstrated by the government's evidence at trial, was well hidden from the DoubleClick Facilities personnel, and therefore difficult to detect by any of them. Moreover, the amount of loss, which the government attempted to prove is impossible to determine with precision.[4]

Five of the 19 invoices identified by Ms. Nasir contained overlapping dates of a day or two. In one instance, Dennis Cycan approved two bills with overlapping dates. When that was pointed out to him on the witness stand, he admitted he had simply made a mistake and thought that Accounts Payable was responsible for catching such mistakes. (See G-317A and B as well as Cycan's testimony at T. 2741 to 2743). Four other invoice sets have overlapping dates of one day: G-312E (April 5, 2000 overlaps with one date on G-312A and was approved by Tiqua Meed[5];); G-312G (April 21 overlapped with one date on G-312A approved by Tiqua Meed); G-

---

[4] Altieri stipulated loss amount of over $120,000 for Guideline loss calculation both because he had and has no real idea of the scope of Contino's scheme and because the calculation produced a Guideline Range of 0-6 months in Zone A (the lowest guideline range possible). Altieri adheres to the stipulation of the Guideline range and the manner in which it was calculated.

[5] Though her name is spelled Mead throughout the transcript, she has told me her name is spelled Meed.

7

313A and C have one overlapping day – May 16,2000; and G-316C has one date – February 16, 2000 – overlapping with G316A.  As Dennis Cycan pointed out, such billing would be hard for any of the Facilities personnel, who approved the invoices, to have seen.  In truth, it is equally possible that such one or two day overlaps were a genuine billing mistake rather than part of Contino's scheme.

Of the remaining 14 invoices, six were approved by Tiqua Meed without Altieri ever seeing or knowing about them, according to her testimony: G-303C, which contains Ms. Meed's admonition "Please process if haven't already" (T. 2845); G-304A and C (She signed both. T.2846); G-305A and C (She signed both.  T. 2848); G-307C (T. 2850); G-309C (T. 2853) and G-312C (T. 2856).  Of the remaining eight invoices, three were not marked approved by any Facilities personnel: G-302C; G-306C and G-311A.  Of the remaining five invoices, two were approved by Dennis Cycan: G-310C and G-317A and C.  G-314 were invoices for cleaning in Thornton, Colorado.

In short, the record at trial contains no proof – no allegation by any witness nor circumstantial evidence – that Altieri was aware of Contino's scheme until it was well over. Thus, whatever loss DoubleClick suffered (and it is certainly interesting that even now DoubleClick has no idea of the amount of loss.  See Pre-Sentence Report at ¶ 36.), was not directly or proximately caused by Altieri's Misprision, foreclosing the imposition of any restitution.

## C. DETERMINING RESTITUTION WOULD UNNECESSARILY BURDEN THE SENTENCING PROCESS

Moreover, the determination of amount is "complex" and the necessary hearing "would complicate and prolong the sentencing process to a degree that the need to provide restitution [to a company that did not even bother to figure out its loss] is outweighed by the burden on the

sentencing process." 18 U.S.C. §3663A(c)(3)(B).  The intervening causes — such as the failure of DoubleClick Accounts Payable to catch obvious errors in the invoices such as arithmetical errors, overlapping dates, identical invoice numbers and to heed admonitions such as "process if you haven't already" — would require testimony from DoubleClick Accounts Payable personnel.  Determining the actual loss – something not even attempted by DoubleClick (see PSR at ¶ 36) – would require an analysis of the invoices and consideration of the testimony (or new testimony) from the then DoubleClick Facilities personnel.

## **CONCLUSION**

For all the reasons expressed above, this Court cannot and should not impose restitution upon Francis Altieri at his sentence.

Should restitution be ordered, Altieri objects to the amount of $180,000 and demands a hearing to establish the appropriate amount.

Dated: September 23, 2008        Respectfully Submitted,
      New York, NY

                              /s Alan Silber
                              ALAN SILBER, ESQ. (AS 2370)
                              WALDER, HAYDEN & BROGAN, P.A.
                              5 Becker Farm Road
                              Roseland, New Jersey 07068
                              (973) 992-5300
                              Attorneys for Defendant ALTIERI

The author expresses thanks to Kate E. Wigginton, a student at Seton Hall Law School, for her valuable assistance in the preparation of this brief.

TO:   *via ECF*
     UNITED STATES DISTRICT COURT, EDNY
     Clerk of the Court
     200 Federal Plaza
     Central Islip, NY 11722

     *via ECF and Lawyer's Service*
     UNITED STATES DISTRICT COURT, SDNY
     Hon. Naomi R. Buchwald, USDJ
     500 Pearl Street
     New York, NY 10007

     *via ECF*
     UNITED STATES ATTORNEY'S OFFICE, SDNY
     Attn.: Arlo Devlin-Brown, AUSA
       Katherine Goldstein, AUSA
     One St. Andrews Plaza
     New York, NY 10007

**CERTIFICATION OF ELECTRONIC MAILING**

      This is to certify that a copy of the foregoing was sent via electronic means, this 23rd day of September, 2008, in compliance with the local rules of practice and procedure, to the person(s) and/or entities as listed below.

      UNITED STATES ATTORNEY'S OFFICE, SDNY
Attn.:  Arlo Devlin-Brown, AUSA
       Katherine Goldstein, AUSA
One St. Andrews Plaza
New York, NY 10007

      /s Alan Silber
      ALAN SILBER (AS 2370)